UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THOMAS FOLEY,                                No. C 10-3882 JCS

        Plaintiff(s),                **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

    v.                                       **[Docket No. 8]**

JETBLUE AIRWAYS, CORP.,

        Defendant(s).
_____/

## I.    INTRODUCTION

Plaintiffs Thomas Foley, Vita Zavoli, Lillian Scaife, and the California Council of the Blind ("Plaintiffs") filed this action on August 30, 2010, alleging that Defendant JetBlue Airways, Corp. ("Defendant") violated California's Unruh Civil Rights Act, Disabled Persons Act, and Business & Professions Code by operating its website and airport check-in kiosks in such a way that they are not accessible to the visually impaired.  On October 29, 2010, Defendant filed a Motion to Dismiss ("the Motion").  The parties twice stipulated to continue the hearing on the Motion in order to pursue settlement.  The Motion came on for hearing on July 22, 2011.  Having considered the submitted papers and arguments of counsel at the hearing, and for the reasons stated below, the Motion is GRANTED.

//

//

//

//

## II.      BACKGROUND[1]

### A.      Factual Background

Defendant JetBlue operates jetblue.com, a commercial travel website available for use by the general public. Complaint at ¶ 18. Jetblue.com offers a variety of information and features, including flight schedules and prices, which visitors can browse when planning travel; online ticket sales, including seat selection; special online discounts for travel booked online or travel to select destinations; information about and the opportunity to join the airline's customer loyalty program, TrueBlue; and other travel services such as reserving and purchasing vacation packages, cruises, hotel rooms, and car rentals. *Id.* Plaintiffs allege that Jetblue created and maintains its website such that it is not accessible to Plaintiffs and others with visual impairments. *Id.* at ¶ 21. Plaintiffs and others with visual impairments access websites by using screen-reading software that converts visual information on a website into speech or presents it by means of a Braille display. *Id.* at ¶ 23. This screen-reading software allows the visually impaired to navigate the website independently and access all of the information available on it. *Id.* However, when websites are not designed to allow screen readers or other assistive technology to retrieve information on the site, Plaintiffs and others with visual impairments are not able to independently access all of the information available to individuals without visual impairments. *Id.* Plaintiffs allege that JetBlue could make its website accessible to Plaintiffs and others who use screen readers or other assistive technology by meeting accepted web accessibility standards, but has failed to do so. *Id.* at ¶¶ 24, 25.

JetBlue also operates check-in kiosks at eight California airports in and out of which it flies. *Id.* at ¶ 19. These kiosks provide travelers with independent, quick access to functions such as seat selection and boarding pass issuance. *Id.* JetBlue's kiosks also allow travelers to avoid the longer "full service" lines and get to security checkpoints more quickly. *Id.* However, Plaintiffs and other travelers with visual impairments cannot use these kiosks because they do not provide speech output

---

[1]The Court accepts all well-pled factual allegations of the complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996).

United States District Court

For the Northern District of California

of the information that appears on the screen or the option to input information through a tactile keypad or other accessible method. *Id.* at ¶ 26. Plaintiffs allege that accessible kiosks, offering speech output and tactile or otherwise accessible keypads, are available on the market, but JetBlue has not installed such kiosks at its airports in California. *Id.* at ¶ 26.

Plaintiffs assert three causes of action against JetBlue: (1) violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq.*; (2) violation of the Disabled Persons Act, Cal. Civ. Code §§ 54, *et seq.*; and (3) violation of the California Business & Professions Code §§ 17200, *et seq.*

**B.     Procedural Background**

On August 30, 2010, Plaintiffs filed this action alleging that Defendant violated California's Unruh Civil Rights Act, Disabled Persons Act, and Business & Professions Code. Plaintiffs seek injunctive relief; declaratory relief; damages; restitution; and attorney's fees, expenses, and costs. On October 29, 2010, Defendant filed a Motion to Dismiss. On May 4, 2011, Defendant filed a Statement of Recent Decision and attached a copy of *Nat'l Fed'n of the Blind v. United Airlines, Inc.*, No. C 10–04816 WHA, 2011 WL 1544524 (N.D. Cal. April 25, 2011). In *United Airlines*, three blind individuals and the National Federation of the Blind filed a lawsuit against United Airlines, alleging that it violated the Unruh Civil Rights Act and the Disabled Persons Act by maintaining its airport check-in kiosks such that they are inaccessible to the blind. The court held that the plaintiffs' claims were expressly preempted by the Airline Deregulation Act and field preempted by the Air Carrier Access Act. The court relied in large part on a Statement of Interest filed by the United States in response to the court's Request for Input from the United States and the Department of Transportation.

On May 31, 2011, Defendant submitted a Request for Judicial Notice of the Statement of Interest by the United States filed in *United Airlines*. The Statement concluded that the Plaintiffs' state law claims were expressly preempted by the Airline Deregulation Act and both field and conflict preempted by the Air Carrier Access Act.

3

United States District Court

For the Northern District of California

1    Both parties submitted supplemental briefing on July 1, 2011.  In its Supplemental Brief,

2 Defendant adopted the arguments made by the United States in its Statement of Interest and argued

3 that the Statement of Interest represents the judgment of the Department of Transportation.

4 Defendant claims that the Statement of Interest is entitled to *Chevron* deference as it relates to

5 express preemption and *Auer* deference as it relates to field preemption.  Plaintiffs argue in their

6 Supplemental Brief that the analysis of the United States in its Statement of Interest is flawed

7 because JetBlue's website and kiosks are not "services," and the ACAA and its regulations do not

8 occupy the field of website and kiosk accessibility.

9        **C.      The Defendant's Motion**

10    Defendant moves to dismiss all claims against it.  First, Defendant argues that the federal Air

11 Carrier Access Act, 49 U.S.C. § 41705, and the federal Airline Deregulation Act, 49 U.S.C. § 41713,

12 preempt Plaintiffs' state law claims based on the Unruh Civil Rights Act, Cal. Civ. Code § 51; the

13 Disabled Persons Act, Cal. Civ. Code §§ 54-55.3; and the Unfair Competition Law, Cal. Bus. &

14 Prof. Code §§ 17200-17209.  Second, Defendant argues that the application of Plaintiffs' state law

15 claims to Defendant's website would constitute a violation of the Dormant Commerce Clause.

16 Third, Defendant argues that Plaintiffs fail to state a claim under the Unruh Act, Disabled Persons

17 Act, Unfair Competition Law, or for Declaratory Relief.

18    Plaintiffs oppose Defendant's Motion.  First, Plaintiffs argue that their claims under the

19 Unruh Act and the Disabled Persons Act are the type of claims that the Ninth Circuit has held are

20 not preempted by the Airline Deregulation Act or the Air Carrier Access Act.  Plaintiffs argue that

21 the Airline Deregulation Act does not expressly preempt their state law claims because "service" is a

22 term that has been narrowly defined and does not include websites and kiosks.  Plaintiffs argue that

23 the Air Carrier Access Act does not field preempt their state law claims because the Department of

24 Transportation's regulations pursuant to the Air Carrier Access Act are not a pervasive scheme of

25 federal laws regulating the accessibility of website or kiosks.  Second, Plaintiffs argue that their

26 claims are not barred by the Dormant Commerce Clause because the Unruh Act and the Disabled

27

28                                          4

Persons Act only indirectly affect interstate commerce, and California has a compelling interest in equality, inclusiveness, and personal independence that outweighs any burden on interstate commerce. Third, Plaintiffs argue that they have adequately stated claims under the Unruh Act and the Disabled Persons Act. Plaintiffs ask the Court to deny JetBlue's Motion, or, alternatively, to be given leave to amend to state a cause of action upon which relief may be granted.

## III.    ANALYSIS

### A.    Legal Standard – Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). To meet this requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. *Id.* at 1949-50.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim on which relief can be granted. A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotations omitted; emphasis in original). Together, *Iqbal* and *Twombly* represent "a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, 'plausibly give rise to an entitlement to relief.'" *Fallcochia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d

United States District Court

For the Northern District of California

860, 865 (E.D. Cal. 2010) (citing *Iqbal*, 129 S. Ct. at 1950; *Erickson v. Pardus*, 551 U.S. 89 (2007)).

Plausibility, as used in *Twombly* and *Iqbal*, refers to whether the non-conclusory factual allegations, when assumed to be true, "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. At 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

### B.    Federal Preemption – Applicable Federal Law

Federal preemption doctrine has its roots in the Supremacy Clause of the Constitution, which provides that the Constitution and the laws of the United States "shall be the supreme Law of the Land." *Fid. Fed. Savings & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982); U.S. Const., art. VI, cl. 2.  Whether federal law may be said to preempt state law is a question of congressional intent. *Cal. Fed. Sav. and Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987).  *See also Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) ("the purpose of Congress is the ultimate touchstone of preemption analysis" (citations omitted)).  A court may find that Congress intended to preempt state law in three different scenarios.  *Bank of Am. v. City and County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002).  First, Congress may expressly preempt state law.  *Id.* (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)).   Second, "preemption may be inferred when federal regulation in a particular field is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Id.* (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).  Third, federal law preempts state law where state law conflicts with federal law such that compliance with both is a physical impossibility, or where the state law stands in the way of the purposes and objectives of Congress.  *Id.* (citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

A court's inquiry into federal preemption begins with the assumption that Congress did not intend to preempt state law.  *Altria Group, Inc. v. Good*, 129 S. Ct. 538, 543 (2008) ("when addressing questions of express or implied pre-emption, we begin our analysis 'with the assumption

that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress'") (quoting *Rice*, 331 U.S. at 230). *See also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("Congress does not cavalierly pre-empt state-law causes of action"). This presumption is especially in force when Congress has legislated in a field usually occupied by the states. *Altria Group*, 555 U.S. at 543. However, the presumption against finding preemption is not applicable where the state regulates in an area "where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000).

### 1.    The Airline Deregulation Act (ADA) – Express Preemption

In 1978, Congress enacted the Airline Deregulation Act (ADA) after determining that "efficiency, low prices, variety, and quality" in the airline industry "would be furthered by reliance on competitive market forces rather than pervasive federal regulation."[2] *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1262 (9th Cir. 1998). To make certain that the states would not "undo" federal deregulation, Congress included an express preemption provision in the statute, which was amended in 1994 to read as follows: "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992); 49 U.S.C.A. § 41713(b)(1) (West 2011).

### 2.    Application of the Law to the Facts of the Case

#### a.    Whether JetBlue's Website and Kiosks Are "Services" Under the ADA

Defendant argues that the ADA expressly preempts Plaintiffs' state law claims because California's Unruh Civil Rights Act and Disabled Persons Act, as applied to JetBlue's website and kiosks, "relate to" a "price, route, or service" of the airline. The Court disagrees.

For preemption purposes, a state or local law is "related to" a "price, route, or service" if it has "a connection with or reference to airline rates, routes, or services." *Morales*, 504 U.S. at 384

---

[2]The ADA was enacted as an amendment to the Federal Aviation Act of 1958. H. Rep. No. 95-1211 (1978).

United States District Court

For the Northern District of California

(internal quotations omitted).  A state or local law has a "reference to" a price, route, or service where the law "acts immediately and exclusively upon [price, route or service] . . . or where the existence of a [price, route or service] is essential to the law's operation."  *Air Transp. Ass'n of Am. v. City and County of San Francisco*, 266 F.3d 1064, 1071 (9th Cir. 2001) (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997)).  To determine whether a state or local law has a "connection with" a price, route, or service, the court looks to the objectives of the ADA as "a guide to the scope of the state law that Congress understood would survive" and to the nature of the law's effect on price, route, or service.  *Id.*

The Supreme Court has cautioned against overextending the scope of the ADA preemption provision, stating that state or local laws may affect air carriers in "too tenuous, remote, or peripheral a manner to have pre-emptive effect."  *Morales*, 504 U.S. at 390 (internal quotations omitted).  Only regulation that has a "significant effect" on prices, routes, and services shall be considered preempted by the ADA because Congress's intent in enacting the ADA was to deregulate the airline industry, not to immunize airlines from state claims that might impact the airlines in "some peripheral way."  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 475 (9th Cir. 2007) (citing *Charas*, 160 F.3d at 1266).

The Ninth Circuit in *Charas* defined the term "service," holding that Congress used the term in the "public utility sense – *i.e.*, the provision of air transportation to and from various markets at various times."  *Charas*, 160 F.3d at 1266.  The Ninth Circuit reasoned that because "rates" and "routes" refer to point-to-point transportation of passengers, "service," when juxtaposed with those terms, "refers to such things as the frequency and scheduling of transportation, and to the selection of markets to or from which transportation is provided."  *Id.* at 1265-66.  More specifically, "service" in the context of the ADA preemption clause refers to "prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail."  *Id.* at 1261.  To define "service" more broadly for purposes of preemption under the ADA would result in preemption of nearly all actions taken by an airline.  *Id.* at 1266.  The Ninth Circuit based this

definition of "service" on the language as well as the objectives of the ADA, holding that "in enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of airlines and the forces of competition within the airline industry." *Id.* at 1261.

Using that definition of "service," the Ninth Circuit held in *Charas* that the plaintiffs' state law personal injury claims against various airlines were not preempted by the ADA. *Id.* at 1266. The court held that "service" did not refer to the actions on which plaintiffs based their tort claims: "pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions." *Id.* Moreover, it was not Congress's "clear and manifest purpose to displace state tort law in actions that do not affect deregulation in more than a peripheral manner" (citing *Morales*, 504 U.S. at 390) (internal quotations omitted).

The Ninth Circuit extended its holding in *Charas* to state disability discrimination claims in *Newman v. American Airlines*, 176 F.3d 1128 (9th Cir. 1999). In that case, the plaintiff alleged that the airline discriminated against her on the basis of disability when it refused to allow her to board after discovering that she was visually impaired and suffered from cancer and a heart condition. *Id.* at 1130. The court held that the plaintiff's state disability discrimination claims were not preempted by the ADA because "[a]s used in a public utility sense, the term 'service' does not refer to alleged discrimination to passengers due to their disabilities." *Id.* at 1131.

In *Air Transp. Ass'n of Am.*, 266 F.3d at 1072, the Ninth Circuit applied *Charas* to hold that a San Francisco ordinance prohibiting the city from contracting with companies who discriminated in providing "travel benefits" and "employee discounts" to employees was not related to a price or service. The court held that "a local law will have a prohibited connection with a price, route or service if the law binds the air carrier to a particular price, route or service and thereby interferes with competitive market forces within the air carrier industry." *Id.* The ordinance made no reference to airlines' prices or services, and it did not have a "connection with" prices or services

9

United States District Court

For the Northern District of California

because it simply required that the airlines not discriminate in their provisions of benefits – as opposed to binding the airlines to provide free or discounted tickets to anyone. *Id.* Therefore, the ordinance was not preempted by the ADA. *Id.*

The Court finds that under *Charas* and its progeny, Plaintiffs' claims under the Unruh Act and the Disabled Persons Act do not "relate to" a "service" of JetBlue and therefore are not preempted by the ADA. JetBlue's website and kiosks are not themselves "prices, schedules, origins [or] destinations of the point-to-point transportation of passengers, cargo, or mail." *Charas*, 160 F.3d at 1261. Any impact on prices, schedules, and routes by applying the Unruh Act and the Disabled Persons Act to JetBlue's website and kiosks would be "too tenuous, remote, or peripheral" an impact to find express preemption. *See Morales*, 504 U.S. at 390. Equal access to a website and kiosks does not have a "significant effect" on ticket prices or airline routes or schedules. *See Montalvo*, 508 F.3d at 475 (citing *Charas*, 160 F.3d at 1266). As the Ninth Circuit held in *Newman*, "service" does not refer to discrimination against passengers on the basis of disability. *Newman*, 176 F.3d at 1131.

Moreover, applying the Unruh Act and the Disabled Persons Act to JetBlue's website and kiosks will not interfere with Congress's objective of deregulating the airline industry. JetBlue already provides a website and kiosks for use by its customers; Plaintiffs' claims, should they succeed, will not force JetBlue to offer any amenities that it does not already provide to its sighted customers. Application of the Unruh Act and the Disabled Persons Act to JetBlue's website and kiosks does not bind JetBlue to a particular price, route or service that it does not already offer, and therefore such an application does not interfere with competitive market forces in the air carrier industry. *See Air Transp. Ass'n of Am.*, 266 F.3d at 1072. It simply requires that JetBlue not discriminate in the way in which it provides amenities to its passengers. *See id.*

The United States, in its Statement of Interest filed in *United Airlines*, and some district courts in the Ninth Circuit have called into question the validity of *Charas*'s definition of "service" after the Supreme Court's ruling in *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364

(2008).[3]  This Court finds that even if the Ninth Circuit's definition of "service" is not compatible with the Supreme Court's analysis in *Rowe*, Plaintiffs' claims are not preempted by the ADA under *Rowe*.

In *Rowe*, the Supreme Court held that the Federal Aviation Administration Authorization Act (FAAAA), which contains a provision preempting state trucking regulation,[4] preempted a Maine law regulating the delivery of tobacco. *Rowe*, 552 U.S. at 368.  The Maine law required tobacco retailers to use a delivery service that provides a recipient-verification service and forbid any person from "knowingly" transporting a tobacco product to anyone unless the sender or receiver has a Maine tobacco license. *Id.* at 369.  The law provided that a person is "deemed to know" that a package contains tobacco

> (1) if the package is marked as containing tobacco and displays the name and license number of a Maine-licensed tobacco retailer; or (2) if the persons receives the package from someone whose name appears on a list of un-licensed tobacco retailers that Maine's Attorney General distributes to various package-delivery companies.

*Id.*  Because the FAAAA's preemption clause was modeled after the ADA's preemption clause, the Supreme Court relied heavily on its analysis of the ADA in *Morales*. *Id.* at 368.

The Supreme Court held that the Maine law "related to" motor carrier "services" and was therefore preempted. *Id.* at 368, 370-71.  The law had a direct "connection with" motor carrier services because it specifically referenced a "delivery service." *Id.* at 371.  Although the Maine law was directed at the tobacco industry, the Court held that it had a "'significant' and 'adverse' impact" on the FAAAA's preemption objective because it would "require carriers to offer a system of services that the market does not now provide" – delivery services with recipient-verification systems and a system by which carriers check each shipment for certain markings and compare it to

---

[3]*See Nat'l Fed'n of the Blind v. United Airlines, Inc.*, No. C 10–04816 WHA, 2011 WL 1544524 (N.D. Cal. April 25, 2011); *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2008 WL 1885794 (N.D. Cal. April 25, 2008).

[4]The FAAAA's preemption clause reads as follows: "[A] state . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property."  49 U.S.C.A. § 14501(c)(1) (West 2011).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

the list provided by the Attorney General. *Id.* at 371-72 (citing *Morales*, 504 U.S. at 390), 373. The law therefore impermissibly regulated the "essential details of a motor carrier's system for picking-up, sorting, and carrying goods - essential details of the carriage itself." *Id.* at 373. The Court did not expressly define the term "service."

Under *Rowe*, Plaintiffs' claims are not preempted by the ADA. First, neither the Unruh Act nor the Disabled Persons Act reference airline prices, routes, or services. In *Rowe*, the statute at issue explicitly referenced providing a service; the Unruh Act and the Disabled Persons Act make no such reference. Second, applying the Unruh Act and the Disabled Persons Act to JetBlue's website and kiosks will not interfere with the ADA's preemption objective because JetBlue already provides a website and kiosks to its customers. Plaintiffs' claims, should they succeed, will simply require that JetBlue not discriminate in offering those amenities. The Maine statute at issue in *Rowe* would have required the trucking industry to adopt an entirely new service not currently demanded by the market. That is not the case here. Third, access to websites and kiosks for the visually impaired is not an "essential detail" of air transportation. At issue in *Rowe* were the details of a system for picking-up, sorting, and carrying goods. Those are "essential details" of a motor carrier's operation, or, as the Court stated, "of the carriage itself." Websites and kiosks are air travel amenities, not "essential details" of air transportation.[5]

> **b.    Whether Application of the Unruh Act and the Disabled Persons Act Has an Impermissible Effect on Competition and Prices in the Airline Industry**

In addition, Defendant argues that "applying state law to regulate the accessibility of websites and kiosks on behalf of one airline carrier would adversely affect the forces of competition within the airline industry." Motion at 12. The Court disagrees.

---

[5]In *Nat'l Fed'n of the Blind v. United Airlines*, No. C 10-04816 WHA, 2011 WL 1544524 (N.D. Cal. April 25, 2011), Judge Alsup, in a thorough analysis of the case law, reached the opposite conclusion and held that under *Rowe*, United's kiosks constituted a "service" of the airline, and the plaintiffs' state law claims were therefore expressly preempted. This Court is more persuaded by Plaintiffs' arguments on this issue and disagrees with Judge Alsup's conclusion regarding express preemption under *Rowe*.

**United States District Court**
For the Northern District of California

1   Defendant's argument is flawed for two reasons.  First, Defendant provides no support for its

2   conclusion that requiring JetBlue to comply with state anti-discrimination laws would adversely

3   affect the forces of competition.  Second, even if Defendant were to provide evidentiary support for

4   its argument, it would not be appropriate on a motion to dismiss.  The Court is not persuaded that

5   requiring an airline to comply with state anti-discrimination laws with regard to kiosks and websites

6   automatically results in an adverse effect on economic deregulation of the airline industry.[6]

7   Defendant also argues that application of the Unruh Act and the Disabled Persons Act

8   "relate[s] to" JetBlue's "prices."  Defendant argues that because Plaintiffs seek "injunctive relief

9   remedying the discrimination," Plaintiffs' lawsuit "impermissibly seeks injunctive relief relating to

10   price, in violation of the Deregulation Act."  Motion at 13.  The Court is not persuaded by this

11   argument.  Plaintiffs do not seek to change Defendant's prices.

12   The fact that there may be costs associated with the injunctive relief also does not

13   demonstrate that Plaintiffs' claims would be inconsistent with Congress's intent in enacting the

14   ADA.  Any time discrimination is alleged to exist, there may be costs associated with remedying

15   that discrimination.  *See Duncan v. Northwest Airlines, Inc.*, 208 F.3d 1112, 1115 (9th Cir. 2000)

16   (rejecting a similar argument and noting that all successful tort claims carry an economic cost for the

17   defendant that may cause the defendant to decide to change its operations).  To suggest here, at the

18   motion to dismiss stage, that the costs will be so high as to force price changes within the airline

19   industry is simply not supported by the facts or the case law, nor is it appropriate to determine at this

20   _____

21   [6]Nor can the Court accept Plaintiffs' invitation to conclude that "if JetBlue's website and check-
in kiosks were accessible to people with visual impairments, the forces of competition would be swayed

22   in JetBlue's favor, as these customers would be able to do more business with JetBlue."  Opposition at
10.  Neither Defendant's nor Plaintiffs' arguments on this point are appropriate on a motion to dismiss,

23   where the Court is not permitted to look at evidence or disputed facts outside of the Complaint.

24   The same is true of the portion of the United States's Statement of Interest cited by Defendant
in its Supplemental Brief.  Defendant argues, quoting the Statement of Interest, that "'[airlines] compete

25   with one another by providing customers with fast and convenient access to information available via
the kiosks,' so '[p]ermitting state regulation of kiosks would undermine Congress's intent to rely on
competitive market forces to further efficiency, innovation, and low prices as well as variety and quality

26   of air transportation services."  Defendant's Supplemental Brief at 8.  This is too fact-intensive a
conclusion for the motion to dismiss stage.  *See Montalvo*, 508 F.3d at 475.

27

28   13

**United States District Court**
For the Northern District of California

stage of the case. *Montalvo* does not support Defendant's argument. In that case, the Ninth Circuit reversed a district court's finding of preemption because the district court had no factual basis to conclude that a seating reconfiguration would materially affect prices. *Montalvo*, 508 F.3d at 475-76. Yet, Defendant asks the Court to conclude – without any facts on the record – that a redesign of Defendant's website and kiosks in order to accommodate the blind would result in an impermissible regulation of prices, as a matter of law. The Court declines to adopt this conclusion.

### c. Whether Plaintiffs' Statements in the Complaint Regarding "Services" of JetBlue Constitute Judicial Admissions

In addition, Defendant argues that Plaintiffs have admitted in their Complaint that JetBlue's website and kiosks are "services" within the meaning of the ADA's preemption provision and that Plaintiffs should be bound to this judicial admission. The Court disagrees.

A judicial admission is a formal admission in a pleading that has "the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (internal quotations omitted). *See also United States Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 833 n.4 (10th Cir. 2005) (noting that "[j]udicial admissions are formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute" (internal quotations omitted)). A judicial admission is conclusively binding on the party who made it. *Am. Title Ins.Co.*, 861 F.2d at 226. However, a judicial admission may be amended. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 960-61 (9th Cir. 1995) (noting that a judicial admission is no longer binding if the party subsequently amends the pleading). As the Ninth Circuit has stated: "Where . . . the party making an ostensible judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight." *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859-60 (9th Cir. 1995).

Defendant's "judicial admission" argument is flawed because the law is clear that in order to constitute a judicial admission, the party against whom the admission is sought must have admitted *a fact*. *See Pierson v. Ford Motor Co.*, No. C 06-6503, 2008 WL 7074289, at *2 (N.D. Cal. Oct. 3,

2008) (holding that plaintiff's allegation in the complaint that the negligence of a non-party caused the accident was a legal conclusion or opinion, not a statement of fact or formal admission with the effect of withdrawing a fact from issue). Plaintiffs' use of the term "services" in the Complaint was not intended to be a statement of conclusive fact. Moreover, the fact that Plaintiffs use the word "services" in the generic sense in describing Defendant's operations does not constitute an admission that those operations are "services" as defined by the ADA.

> **d.** **Deference to the Statement of Interest Filed in *United Airlines***

In its Supplemental Brief in Support of its Motion to Dismiss, Defendant argues that the United States's Statement of Interest filed in *United Airlines*, concluding that the ADA expressly preempts state law claims relating to kiosk accessibility, represents the Department of Transportation's interpretation of the ADA and is therefore entitled to deference under *Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984). Under *Chevron*, where congressional intent is not clear, an agency's construction of a statute is entitled to deference as long as it is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 842-43. Defendant argues that the conclusion in the Statement of Interest that state law claims relating to airline kiosks are preempted by the ADA is controlling in the present case. The Court disagrees.

There are two problems with Defendant's argument. First, the Statement of Interest is not the type of formal agency interpretation entitled to *Chevron* deference. In some circumstances, it may be appropriate to afford an agency *Chevron* deference despite the agency's lack of formal notice and comment rulemaking on the issue. *United States v. Mead Corp.*, 533 U.S. 218, 230–231 (2001). However, such formal processes are "a very good indicator" of interpretations meriting *Chevron* deference. *Id.* at 229-30. For example, in *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 399 (2008), the Supreme Court did not afford "full *Chevron* deference" to the Equal Employment Opportunity Commission's policy statements contained in its compliance manual and internal directives. In *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), the Supreme Court did not defer to an agency interpretation contained in an opinion letter.

United States District Court

For the Northern District of California

Second, *Chevron* deference is inappropriate where it is questionable whether Congress intended to delegate particular interpretative authority to the agency. *Mead Corp.*, 533 U.S. at 229-30 (citing *Christensen*, 529 U.S. at 596-97 (Breyer, J., dissenting)). In this case, it is doubtful whether Congress intended to delegate to the DOT the authority to determine whether the ADA expressly preempts state law discrimination claims, and *Chevron* deference is therefore inapplicable.

Defendant argues that if the Court does not afford the Statement of Interest deference under *Chevron*, the Statement should be given a lesser degree of deference under *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Under *Skidmore*, an agency interpretation is "entitled to respect" only to the extent that it has the "power to persuade." *Id. See also Gonzales v. Oregon*, 546 U.S. 243, 255 (2006). In determining the proper weight to be given to an agency interpretation under this less deferential standard, the court looks to such factors as the degree of the agency's care; its consistency, formality, and relative expertness; and the persuasiveness of the agency's position. *Mead Corp.*, 533 U.S. at 228. Most importantly, however, although "some weight" may be given to an agency's views regarding federal preemption when the subject matter is technical and the background complex, the courts have "not deferred to an agency's *conclusion* that state law is preempted." *Wyeth v. Levine*, 129 S. Ct. 1187, 1201 (2009) (emphasis in original). In a preemption analysis, the court does not rely on "agency proclamations of preemption." *Id.* Rather, the court attends to the analysis offered by the agency, and the weight accorded its opinion "depends on its thoroughness, consistency, and persuasiveness." *Id.* The Court has noted the analysis of the DOT with regard to express preemption under the ADA, and, for the reasons explained above, does not find it persuasive.

//

//

//

//

//

16

### 3. The Air Carrier Access Act (ACAA) – Field Preemption

In 1986, Congress enacted the Air Carrier Access Act (ACAA), 49 U.S.C. § 41705, in order to address and prohibit discrimination in air travel on the basis of disability.[7] *Elassaad v. Independence Air, Inc.*, 613 F.3d 119, 131 (3rd Cir. 2010). The ACAA provides in relevant part that

> [i]n providing air transportation, an air carrier . . . may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities. (2) the individual has a record of such an impairment. (3) the individual is regarded as having such an impairment.

49 U.S.C.A. § 41705(a) (West 2011). Unlike the ADA, the ACAA does not contain an express preemption provision.

Since 1990, the Department of Transportation (DOT) has promulgated numerous regulations pursuant to the ACAA,[8] two of which are relevant to this case. In 2008, the DOT issued a rule relating to airline websites:

> If your web site that passengers use to make reservations or purchase tickets is not accessible to a passenger with a disability, you must not charge a fee to the passenger who is consequently unable to make a reservation or purchase a ticket on that site for using another booking method (e.g., making a reservation by phone). If a discount is made available to a passenger who books a flight using an inaccessible web site, you must make that discount available to a passenger with a disability who cannot use the web site and who purchases a ticket from you using another method.

14 C.F.R. § 382.31(c) (2011). The DOT has characterized this rule as an interim measure. The DOT considered a proposal that would require air carriers to make their websites accessible to the visually impaired, but comments from air carriers and air carrier organizations that such a rule would be too difficult and expensive led the DOT to "defer[] final action" on the proposal and seek additional comments on the matter. *Nondiscrimination on the Basis of Disability in Air Travel*,

---

[7]The ACAA was enacted as an amendment to the Federal Aviation Act of 1958. S. Rep. 99-400, at 1 (1986).

[8]*See Nondiscrimination on the Basis of Handicap in Air Travel*, 14 C.F.R. Part 382 (2008). These regulations address, generally, "Nondiscrimination and Access to Services," "Accessibility of Airport Facilities," "Accessibility of Aircraft," "Seating Accommodations," "Boarding, Deplaning, and Connecting Assistance," "Services on Aircraft," "Stowage of Wheelchairs, Other Mobility Aids, and Other Assistive Devices," "Training and Administrative Provisions," and "Complaints and Enforcement Procedures." Table of Contents, 14 C.F.R. Part 382 (2008).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Supplementary Information: Information for Passengers, 73 Fed. Reg. 27614, 27637 (May 13, 2008).  For the interim period, the DOT issued the current rule prohibiting air carriers from charging fees and failing to make website discounts available to those customers who make their reservations in person or by phone.  *Id.*  The DOT anticipates that the comment period on rules regarding websites will end on September 7, 2011.  *Report on DOT Significant Rulemakings*, http://regs.dot.gov/rulemakings/ 201010/report.htm#75 (last visited June 28, 2011).

Also in 2008, the DOT issued a rule regarding airline check-in kiosks, which provides as follows:

> As a carrier, if your automated kiosks in airport terminals cannot readily be used by a passenger with a disability for such functions as ticketing and obtaining boarding passes that the kiosks make available to other passengers, you must provide equivalent service to the passenger (e.g., by assistance from your personnel in using the kiosk or allowing the passenger to come to the front of the line at the check-in counter).

14 C.F.R. § 382.57 (2011).  The DOT has also characterized this rule as an interim measure.  In response to a proposed rule that kiosks be made accessible, air carriers and air carrier organizations expressed concern about cost and technical feasibility.  *Nondiscrimination on the Basis of Disability in Air Travel*, Supplementary Information: Accessibility of Airport Terminals and Facilities, 73 Fed. Reg. 27614, 27619 (May 13, 2008).  The DOT planned to seek further comment about kiosks and as an interim measure adopted a rule requiring air carriers whose kiosks are not accessible to provide equivalent services to those who cannot use the kiosks.  *Id.*  The DOT anticipates that the comment period on rules regarding kiosks will end on September 7, 2011.  *Report on DOT Significant Rulemakings*, http://regs.dot.gov/rulemakings/201010/report.htm#75 (last visited June 28, 2011).

> **4.**      **Application of the Law to the Facts of the Case**

Defendant argues that the DOT's regulations, particularly the two rules relating to airline websites and kiosks, occupy the field of disability non-discrimination in air travel and preempt state law as applied to the accessibility of air carrier websites and kiosks.  The Court agrees.

Preemption may be inferred where federal regulation in a particular field is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."  *Bank*

United States District Court

For the Northern District of California

1   *of Am.*, 309 F.3d at 558 (quoting *Rice*, 331 U.S. at 230).  The volume and complexity of federal

2   regulation demonstrates Congress's intent to displace state law in that area.  *Id.* (citing *Geier v. Am.*

3   *Honda Motor Co.*, 529 U.S. 861, 884 (2000)).  However, "the mere existence of a detailed

4   regulatory scheme does not by itself imply preemption of state remedies."  *Keams v. Tempe*

5   *Technical Inst., Inc.*, 39 F.3d 222, 226 (9th Cir. 1994) (citing *English v. Gen. Elec. Co.*, 496 U.S. 72,

6   87 (1990)).  In specific areas without pervasive regulations or other grounds for preemption, state

7   law applies.  *Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 811 (9th Cir. 2009).  *See also*

8   *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 613-14 (1991) (holding that the Federal

9   Insecticide, Fungicide, and Rodenticide Act did not preempt a local ordinance requiring a permit for

10  the application of pesticides because the Act "addresse[d] numerous aspects of pesticide control in

11  considerable detail" but "le[ft] substantial portions of the field vacant," including an affirmative

12  permit scheme for actual use of pesticides).

13          The Ninth Circuit addressed field preemption under the Federal Aviation Act (FAA) in

14  *Montalvo*, 508 F.3d at 471.  In that case, the plaintiffs brought a negligence claim against various

15  airlines for failure to warn of the dangers of deep vein thrombosis and for providing unsafe seating

16  configurations on the aircraft.  *Id.* at 467-68.  The airlines moved to dismiss the failure to warn claim

17  on the ground that the FAA's regulations field preempted plaintiffs' state law claims.  *Id.* at 468.

18  The district court granted the defendants' motion, and the Ninth Circuit affirmed, holding that the

19  comprehensive and pervasive regulations regarding air carrier safety, including specific obligations

20  to provide warnings for passenger safety, showed that Congress intended to preempt state law in the

21  field of aviation safety.  *Id.* at 473-74.

22          However, two years later, the Ninth Circuit clarified its holding in *Montalvo* in *Martin*, 555

23  F.3d at 809-10.  In *Martin*, a pregnant woman fell on an airplane's stairway while exiting the aircraft

24  and injured herself and her fetus.  *Id.* at 808.  She sued the airline and the airline's manufacturer

25  alleging that the stairway was defectively designed because it had only one handrail.  *Id.*  The

26  manufacturer argued that the FAA preempted the plaintiff's personal injury claim.  *Id.*  The Ninth

27

28                                                    19

United States District Court

For the Northern District of California

1   Circuit emphasized that to find field preemption, it would have to "infer that Congress intended to

2   exclude all state law personal injury suits from the area of air travel, even though it didn't say so."

3   *Id.*  The court found that the FAA "betray[ed] no such intention," especially in light of its express

4   provision preserving state remedies.  *Id.*  The court noted that its holding in *Montalvo* "rested

5   heavily" on the FAA's pervasive regulations of warnings to passengers and the FAA's intent that its

6   list of warnings be comprehensive.  *Id.* at 809-10.  Thus, "when the agency issues 'pervasive

7   regulations' in an area, like passenger warnings, the FAA preempts all state law claims in *that* area.

8   In areas without pervasive regulations or other grounds for preemption, the state standard of care

9   remains applicable." *Id.* at 810 (emphasis in original).  Because the only regulation regarding

10  airstairs provided that they could not be designed in such a way as to block emergency exits, the

11  Ninth Circuit concluded that airstairs were not pervasively regulated, and the plaintiff's claims were

12  not preempted.  *Id.* at 812.

13          The Court finds that website and kiosk accessibility is pervasively regulated so as to justify

14  the inference that Congress intended to exclude state law discrimination claims relating to these

15  amenities.  Access to airline websites and kiosks is a narrow field, and the DOT has issued

16  regulations specifically addressing this field.  The DOT regulations at issue specify the

17  accommodations that are required with respect to websites and kiosks: the DOT's rules provide

18  specific steps to be taken in the case of non-accessible websites and kiosks.  Indeed, to hold, as

19  Plaintiffs' claims seek, that these DOT-sanctioned accommodations are not adequate is in conflict

20  with the DOT's regulations.  Moreover, the DOT regulations addressing website and kiosk

21  accessibility are part of a broad, complex regulatory scheme regarding disability non-discrimination

22  in air travel.  *See Nondiscrimination on the Basis of Handicap in Air Travel*, 14 C.F.R. Part 382

23  (2008).  The volume and complexity of these regulations strongly suggests that Congress intended to

24  displace state law in this area.  *See Bank of Am.*, 309 F.3d at 558 (citing *Geier*, 529 U.S. at 884).

25          The regulations in the present case are much like those in *Johnson* and *Russell* where district

26  courts found the plaintiffs' claims to be field preempted.  In *Johnson*, the plaintiff brought a state

27

28                                                      20

**United States District Court**
For the Northern District of California

law negligence claim against an airline after the airline failed to provide her with a wheelchair upon her exit from the aircraft. *Johnson v. Northwest Airlines, Inc.*, No. C 08-02272 VRW, 2010 WL 5564629 at *1 (N.D. Cal. May 5, 2011). The plaintiff's daughter had requested a wheelchair in making her mother's reservation. *Id.* When no wheelchair arrived, the plaintiff attempted to walk to her connecting flight, and she fell exiting a moving walkway. *Id.* The district court held that the plaintiff's claims were preempted because of an ACAA regulation establishing "with specificity an airline's obligation to provide disabled passengers with assistance 'as needed' in deplaning and to ensure disabled passengers are provided with 'transportation between gates to make a connection' as requested." *Id.* at *6 (citing 14 C.F.R. §§ 382.95(a), 382.91). Similarly, in the present case, ACAA regulations establish with specificity the obligations of an airline regarding website and kiosk accessibility. Accordingly, Plaintiffs' state law claims are field preempted.

This conclusion accords with the DOT's interpretation of its regulations. The DOT has stated that its regulations implementing the ACAA are "a detailed, comprehensive, national regulation, based on Federal statute, that substantially, if not completely, occup[y] the field of nondiscrimination on the basis of handicap in air travel." *Nondiscrimination on the Basis of Handicap in Air Travel*, Supplementary Information: Legal and Other General Issues, 55 Fed. Reg. 8008, 8014 (Mar. 6, 1990). The DOT continued, "[I]nterested parties should be on notice that there is a strong likelihood that state action on matters covered by this rule will be regarded as preempted." *Id.* In addition, the Statement of Interest submitted by the United States in *United Airlines* concludes that state law claims related to kiosk accessibility are field preempted by the DOT's regulations. The Court hesitates to defer to the DOT's interpretations of its regulations under *Auer v. Robbins*, 519 U.S. 452, 461 (1997), as "*Auer* deference" is appropriate only where the language of the regulation is ambiguous. *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). Nonetheless, the DOT's interpretation may be given deference under *Skidmore*, 323 U.S. at 140. As previously discussed, the proper weight to be given to an agency interpretation under this less deferential standard depends on factors such as the degree of the agency's care; its consistency,

formality, and relative expertness; and the persuasiveness of the agency's position.  *Mead Corp.*, 533 U.S. at 228.  For the reasons discussed above, the Court finds the DOT's position persuasive as to the pervasiveness of the ACAA regulations and adopts its conclusion regarding field preemption.

Plaintiffs argue that the DOT's regulations regarding website and kiosk accessibility are not pervasive under the Ninth Circuit's decision in *Martin*.  However, in *Martin*, there were no regulations addressing the particular issue in the case – airstair handrails.  *Martin*, 555 F.3d at 812.  In the present case, the DOT has promulgated specific regulations that encompass Plaintiffs' claims.

Plaintiffs also argue that the Court should not consider the DOT's regulations regarding website and kiosk accessibility to be pervasive because the DOT has characterized these regulations as interim measures.  This argument fails to acknowledge that the DOT's regulations are the current laws addressing website and kiosk accessibility, and air carriers are bound to follow them.  While Plaintiffs are correct that the DOT may revisit the issue of website and kiosk accessibility at some point in the future, its current regulations have the force of law.  An agency regulation has the force and effect of law where (1) it is legislative in nature, affecting the rights and obligations of individuals, and (2) it has been "promulgated pursuant to a specific statutory grant of authority and in conformance with the procedural requirements imposed by Congress."  *W. Radio Serv. Co., Inc. v. Espy*, 79 F.3d 896, 901 (9th Cir. 1996) (quoting *United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982)).  In the present case, there is no indication (and Plaintiffs do not argue) that the DOT's regulations addressing website and kiosk accessibility are other than legislative in nature, that those regulations were not promulgated pursuant to a specific statutory grant of authority, or that the DOT has failed to conform with the procedural requirements imposed by Congress.

In addition, Plaintiffs argue that the DOT's regulations addressing website and kiosk accessibility are not pervasive because they do not address whether websites and kiosks must be made accessible to the visually impaired.  However, this argument is flawed because the regulations not only tolerate non-accessible websites and kiosks, they specify the type of accommodations that

United States District Court

For the Northern District of California

1    must be made for disabled passengers.  The regulations provide specific solutions to non-

2    accessibility issues: if an airline's website is not accessible to the visually impaired, the airline may

3    not charge a fee to a passenger who must make a reservation by alternate means; if an airline's

4    website provides discounts to passengers who book travel online, that discount must be made

5    available to passengers who are unable to use the website; if an airline's kiosks are not accessible to

6    the visually impaired, the airline must provide an equivalent service to visually impaired passengers,

7    such as providing assistance in using the kiosk or allowing the passenger to come to the front of the

8    check-in line.  14 C.F.R. §§ 382.31(c), 382.57.  These express alternatives illustrate that the DOT

9    regulations authorize non-accessible websites and kiosks so long as other measures are taken to

10   accommodate visually impaired passengers.[9]

11       Because the Court finds that Plaintiffs' claims are field preempted, the Court does not reach

12   the additional issues raised by the parties, including the merits of Plaintiffs' state law claims.

13

14   _____

15       [9]At oral argument, Plaintiffs made two additional arguments regarding field preemption. First,
     Plaintiffs argued that the DOT's regulation addressing air carrier websites is limited to aspects of the
16   website relating to making reservations and purchasing tickets.  Plaintiffs based this argument on the
     language of 14 C.F.R. § 382.31(c) ("If your web site that passengers use to make reservations or
17   purchase tickets is not accessible to a passenger with a disability . . .").  The Court disagrees with
     Plaintiffs' reading of this regulation. The phrase "that passengers use to make reservations or purchase
     tickets" is used to identify the website covered by the regulation, not to limit the regulation to certain
18   functions of an air carrier's website.

19       Second, Plaintiffs argued that the DOT's regulations are limited to interstate travel and do not
     reach intrastate flights. The Court disagrees. "It is beyond dispute that Congress's power over interstate
20   commerce includes the power to regulate use of the nation's navigable airspace, which is a channel of
     interstate commerce.  In addition, because airplanes constitute instrumentalities of interstate commerce
     . . . any threat to them . . . is properly subjected to regulation even if the threat comes from a purely
21   intrastate activity." *Ickes v. Fed. Aviation Admin.*, 299 F.3d 260, 263 (3d Cir. 2002) (internal citation
     omitted). *See also United States v. Ballinger,* 395 F.3d 1218, 1225-26 (11th Cir. 2005) ("Congress is
22   empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in
     interstate commerce, even though the threat may come only from intrastate activities . . . .
23   Instrumentalities of interstate commerce . . . are the people and things themselves moving in commerce,
     including automobiles, airplanes, boats, and shipments of goods") (internal citations omitted; internal
24   quotations omitted); *United States v. McHenry*, 97 F.3d 125, 127 (6th Cir. 1996) (noting that the
     instrumentalities of interstate commerce include cars, trains, airplanes, and ships); *United States v.*
25   *Bishop*, 66 F.3d 569, 588 (3d Cir. 1995) ("The Supreme Court has made clear that airplanes, railroads,
     highways and bridges constitute instrumentalities of interstate commerce which Congress can regulate
26   under the Commerce Clause . . . Congress may regulate threats to these instrumentalities even though
     the threat may come only from intrastate activities") (citations omitted)( internal quotations omitted).

27

28                                                23

**IV.     CONCLUSION**

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED

IT IS SO ORDERED.


Dated: August 3, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge